Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 1 of 37 PageID #: 242

**STATE OF RHODE ISLAND**
**PROVIDENCE, SC.**

**SUPERIOR COURT**

---

Richard J. Land, solely in his
capacity as Receiver of T&C
Woodworking, Inc.,

    *Plaintiff*

vs.

EBF Partners, LLC d/b/a Everest
Business Funding, John Does 1-10,
ABC Corporations 1-10,

    *Defendants*

---

PC2023-

## **COMPLAINT**

Richard J. Land, Esq., solely in his capacity as Receiver ("Receiver" or "Plaintiff") of T&C Woodworking, Inc. ("Company" or "Debtor"), files this complaint against EBF Partners, LLC d/b/a Everest Business Funding ("Lender"), John Does 1-10, ABC Corporations 1-10, and alleges as follows:

### **INTRODUCTION**

This is a legal and equitable action by the Receiver for relief from defendants, including a so-called "merchant advance company" that purportedly paid a lump sum to purchase a percentage of the Company's future receipts at a discounted price in exchange for the Company agreeing to repay the face value of its receipts through such daily payments (among other

1

terms and conditions). Although the Lender describes the transaction as a purchase of future receipts, in substance the transaction was a disguised loan intended to avoid application of applicable usury laws. The terms of the transaction are unconscionable, usurious, violate public policy, and exemplify predatory lending practices consistent with the dubious merchant advance lending industry.

## PARTIES

1.      Plaintiff was appointed Temporary Receiver of T&C Woodworking, Inc. by order dated March 7, 2023.

2.      Plaintiff was appointed Permanent Receiver of T&C Woodworking, Inc., by order dated April 18, 2023.

3.      The Company is organized under the laws of the State of Rhode Island.

4.      The Company was in the business of providing carpentry services from its sole location at 31 Privet Street, Pawtucket, RI.

5.      EBF Partners, LLC d/b/a Everest Business Funding is a Delaware limited liability company with an address of 102 W 38th Street, 6th Floor, New York, NY 10018.

6.      John Does 1 through 10 are fictitious individuals to represent the person or persons involved in the conduct that gives rise to this Complaint but are unknown to the Plaintiff. As these defendants are identified, Plaintiffs intend to amend this Complaint to include them.

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 3 of 37 PageID #: 244

7.    ABC Corporations 1 through 10 are fictitious entities to represent any additional entities involved in the conduct giving rise to this Complaint but are unknown to the Plaintiff. As these defendants are identified, Plaintiffs intend to amend this Complaint to include them.

8.    Gary Branch ("Gary"), an individual and resident of Rhode Island, was a shareholder and officer of the Company.

## JURISDICTION AND VENUE

9.    This Court has personal jurisdiction over defendants because they have sufficient minimum contacts with Rhode Island.

10.    Lender entered into a purported contractual relationship with a Rhode Island entity.

11.    Lender communicated with Debtor knowing that Debtor was located in Rhode Island.

12.    Lender sent money to Debtor's Rhode Island bank account.

13.    Lender purportedly took a security interest in the Debtor's assets located in Rhode Island.

14.    Lender retrieved payments from Debtor's account knowing that Debtor's operations were principally located in Rhode Island.

15.    Lender purportedly purchased accounts receivable of Debtor's customers located in Rhode Island.

16.    Lender purportedly obtained a personal guaranty from Debtor's principal, who was a Rhode Island resident.

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 4 of 37 PageID #: 245

17.    This Court has jurisdiction over the above captioned matter pursuant to R.I. Gen. Laws §§ 8-2-13 and 8-2-14.

18.    Venue is proper in this Court pursuant to R.I. Gen. Laws §§ 9-4-3 and 9-4-4.

19.    Any choice of law or choice of venue provision in the alleged contracts between the parties are void or unenforceable.

## FACTS

20.    Lender was, at all relevant times, a business that brokered, originated, funded, or serviced loans to merchants, including the Company.

21.    Plaintiff believes that Lender acted together with one or more John Does or ABC Corporations to broker, originate, fund, or service the financial transactions with merchants, including the loan to Debtor.

22.    On or about March 20, 2020, the Debtor entered into a financial transaction with Lender.

23.    Lender documented the transaction as a "purchase" of a "specified percentage" of the Debtor's future receipts ("Future Receipts").

24.    The transaction documents included a Payment Rights Purchase And Sale Agreement ("Agreement"), a copy of which is attached as **Exhibit 1**, a Personal Guaranty Of Performance, see **Exhibit 1**, and ancillary documents to the Agreement, a copy of which are attached as **Exhibit 2** (collectively the "Loan Documents").

25.    Lender purportedly purchased a percentage of $ 44,800.00 of

4

Debtor's Future Receipts for the purchase amount of $ 32,000.00 ("Principal Amount").

26.    Lender charged Debtor $1,245.00 in origination fees, which fees were immediately deducted from the Principal Amount.

27.    According to the Debtor's books and records, Debtor received net proceeds of only $ 30,755.00 from the Principal Amount.

28.    The Loan Documents purportedly required Debtor to repay Lender through daily, equal ACH withdrawals from the Debtor's account in the amount of $373.33.

29.    Between March 23, 2020 and July 22, 2020, Lender withdrew 87 payments totaling approximately $32,479.91 from Debtor's account.

30.    Lender withdrew approximately $47,413.51 in the aggregate.

31.    At all relevant times, all of the Debtor's accounts receivable were subject to a perfected, first priority security interest in favor of HarborOne Bank.[1]

**DISGUISED LOAN**

32.    Despite its label or form, the transaction with Lender was in substance a loan under which the Debtor borrowed $32,000 at usurious interest rates.

33.    The transaction with Lender had several hallmarks of a loan

---

[1] HarborOne Bank is the successor in interest to Coastway Community Bank, the original secured lender to the Debtor.

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 6 of 37 PageID #: 247

including processing fees, fixed equal payments, a security interest in Debtor's assets, a personal guaranty, and non-payment default remedies.

34.    The transaction was underwritten based on an assessment of the Debtor's creditworthiness.

35.    Lender did not evaluate the collectability of the Company's receivables, which were the assets Lender purportedly purchased, prior to funding.

36.    Lender charged Debtor origination fees and other fees.

37.    The fees charged by Lender were disguised interest.

38.    The Lender required the Debtor's principal to execute a personal guaranty.

39.    The Lender required daily ACH withdrawals to be made regardless of the source of funds in the Debtor's bank account.

40.    The payments to the Lender were neither determined nor paid based on any future receipts of the Debtor.

41.    Lender claims the daily withdrawal was a reasonable estimate of 15% of Debtor's future receipts.

42.    The Loan Documents specify that Debtor's monthly average sales were $283,767.01.

43.    According to page 1 of the Loan Documents, the daily payment was calculated as follows:

*Daily Payment = (Monthly Average Sales X Specified Percentage) /*

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 7 of 37 PageID #: 248

*Average Weekdays in a Calendar Month*

44.    Applying the formula in the loan documents results in a daily payment of $2,128.25, calculated as follows:

2,128.25 = *($283,767.01 X 15%) / 20*

45.    Lender knew that the daily withdrawal amount was arbitrary and not calculated based on 15% of Debtor's future receipts.

46.    Instead of calculating and collecting the specified percentage of the Debtor's receipts from purchased accounts receivable as set forth in the Loan Documents, the Lender deducted $373.33 from the Debtor's bank account through ACH withdrawals each business day from March 2020 through July 2020.

47.    Although the Loan Documents purport to contain no fixed term of repayment, a de facto fixed payment term exists by virtue of the repayment structure of the Loan Documents.

48.    The Purchased Amount was to be repaid in a number of days which, on its face, translates into an annual interest rate in excess of the interest rate permitted by law.

49.    The Lender did not assume the risk of loss inherent in ownership of the Future Receipts.

50.    The Lender had full recourse to recover amounts purportedly due under the Loan Documents.

51.    The Loan Documents include a purported security agreement that

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 8 of 37 PageID #: 249

is inconsistent with the transfer of ownership of the Future Receipts.

52.    The Loan Documents include a purported guaranty that is inconsistent with the transfer of ownership of the Future Receipts.

53.    The Loan Documents do not require the Future Receipts to be segregated or placed in a separate account by Debtor.

54.    Debtor purportedly granted Lender authority to act on Debtor's behalf for various purposes, including terminating Debtor's insurance, signing Debtor's name on invoices, and suing in Debtor's name.

55.    Lender had access to or reviewed Debtor's financial information and creditworthiness.

56.    Lender induced the Debtor to enter into the financial transaction after Lender knew or should have known of Debtor's already strained financial position.

57.    Lender acted together with one or more John Does and/or ABC Corporations to accomplish its predatory lending scheme, including collecting an unlawful debt.

**COUNT 1 - VOIDABLE TRANSFER (R.I. GEN. LAWS § 6-16-4)**

58.    The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

59.    The Debtor purportedly incurred obligations under the Loan Documents, purportedly granted a security interest, and made payments to Lender (collectively the "Merchant Advance").

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 9 of 37 PageID #: 250

60.    The Debtor received less than reasonably equivalent value in exchange for incurring, granting and/or making the Merchant Advance.

61.    The Merchant Advance was made with the actual intent to hinder, delay, or defraud any creditor of the Debtor.

62.    The Debtor was insolvent, or became insolvent, at the time the Merchant Advance was granted and/or made.

63.    As a result of the Merchant Advance having been incurred, granted and/or made, Debtor was engaged or about to become engaged in a business or transaction for which the capital remaining in its hands after the incurrence, granting and/or making of the Merchant Advance was unreasonably small.

64.    As a result of the Merchant Advance having been incurred, granted and/or made, Debtor reasonably should have believed that the Debtor would incur debts beyond the Debtor's ability to pay as they became due.

65.    Lender is the entity for whose benefit the Merchant Advance transfer was made, or the immediate or mediate transferee of the initial transferee receiving the Merchant Advance transfer.

66.    One or more John Does and/or ABC Corporations was the entity or person for whose benefit the Merchant Advance transfer were made, or the immediate or mediate transferee of the initial transferee receiving the Merchant Advance transfer.

67.    As a direct and proximate result, Debtor has been damaged in an

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 10 of 37 PageID #:
251

amount to be proven at trial.

## COUNT 2 – DECLARATORY JUDGMENT

68.    The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

69.    Debtor and Lender purportedly entered into a financial transaction that is documented in the Loan Documents.

70.    Lender disguised or misrepresented the Loan Documents as a purchase of Debtor's future accounts receivable.

71.    The financial transaction was, in substance, a loan at usurious rates.

72.    Under R.I. Gen. Laws § 9-30-1 et seq., the Receiver is entitled to seek an order determining the construction and validity of the Loan Documents.

73.    The Receiver seeks an order declaring that the Loan Documents are void and unenforceable because, inter alia, they violate public policy or applicable usury laws.

## COUNT 3 – FRAUD/FRAUDULENT INDUCEMENT

74.    The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

75.    Lender fraudulently induced the Debtor to enter into the Merchant Advance by knowingly misrepresenting the nature of the transactions.

76.    Lender knowingly and falsely represented to the Debtor that the

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 11 of 37 PageID #:
252

Merchant Advance was a purchase of Future Receipts to circumvent usury laws.

77.    Lender misrepresented the nature and amount of Debtor's purported repayment obligations.

78.    To induce the Debtor to enter into the Merchant Advance, Lender knowingly and falsely represented that the Merchant Advance was not a loan with full knowledge that the Merchant Advance was a usurious loan.

79.    To induce the Debtor to enter into the Merchant Advance, Lender knowingly and falsely represented that the ACH withdrawals would be a specified percentage of Future Receipts even though the ACH withdrawals were a fixed amount.

80.    To induce the Debtor to enter into the Merchant Advance, Lender knowingly and falsely represented that the processing fees and other fees charged in connection with the Merchant Advance were costs of the transaction when, in fact, they constituted interest charged in connection with the Merchant Advance.

81.    Lender engaged in fraudulent conduct by failing to disclose the interest rate being charged on the Merchant Advance.

82.    Lender made each of these representations knowing it was false at the time it was made.

83.    Lender made each of these representations willfully, maliciously, and with reckless disregard for the truth intending to deceive the Debtor and

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 12 of 37 PageID #: 253

induce it to enter into the Merchant Advance.

84.    The Debtor, to its detriment, reasonably relied upon the representations made by Lender.

85.    As a direct and proximate result, Debtor suffered damages in an amount to be proven at trial.

## COUNT 4 – USURY (RHODE ISLAND)

86.    The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

87.    Lender loaned money to Debtor at an interest rate exceeding the maximum rate permitted in Rhode Island in violation of §6-26-2.

88.    Lender reserved, charged, demanded, or took from Debtor interest exceeding the 21% maximum rate in Rhode Island in violation of §6-26-2.

89.    One or more John Does and/or ABC Corporations acted together with or on behalf of Lender in reserving, charging, demanding, or taking from Debtor interest exceeding the 21% maximum rate in Rhode Island in violation of §6-26-2.

90.    Lender, John Does and/or ABC Corporations knowingly and willfully violated §6-26-2 and are consequently liable for punitive damages.

91.    As a direct and proximate result, Debtor suffered damages in an amount to be proven at trial, including usurious interest and fees.

## COUNT 5 – RICO (18 U.S.C. § 1961 et seq.)

92.    The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

93.    Lender, Gary, John Does, and ABC Corporations are "persons" within the meaning of 18 U.S.C. § 1961(3) in that each is either an individual, corporation, or limited liability company capable of holding a legal interest in property.

94.    Plaintiff believes that Lender, Gary, John Does, and/or ABC Corporations were persons that exist separate and distinct from the enterprise described herein.

95.    Plaintiff believes that Lender, Gary, John Does and/or ABC Corporations constitute an Enterprise ("Enterprise") within the meaning of 18 U.S.C. § 1961(4).

96.    Plaintiff believes that Lender, Gary, John Does, and/or ABC Corporations are associated in fact for the common purpose of carrying on an unlawful enterprise.

97.    Plaintiff believes that the Enterprise has a common goal of soliciting, funding, servicing, or collecting upon usurious loans that charge interest at more than twice the enforceable rate under applicable state law.

98.    Plaintiff believes that the members of the Enterprise have had ongoing relations with each other through common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the

purpose of originating, underwriting, servicing, or collecting upon unlawful debts issued by the Enterprise to businesses.

99.    The debt evidenced by the Loan Documents constitutes unlawful debt within the meaning of 18 U.S.C. § 1961(6) because (i) it violates applicable usury statutes and (ii) the rates are more than twice the legal rate permitted under applicable law.

100.    Plaintiff believes that the members of the Enterprise have had ongoing relations with each other through common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of collecting upon fraudulent fees through electronic wires.

101.    The Enterprise's conduct constitutes "fraud by wire" which is "racketeering activity" as defined by 18 U.S.C. § 1961(1).

102.    The Enterprise is engaged in interstate commerce and uses the instrumentalities of interstate commerce in its business activities.

103.    The Enterprise used interstate emails to originate, underwrite, service and/or collect upon the Loan Documents.

104.    The Enterprise used interstate electronic ACH transactions to fund the advances and/or collect daily payments via debits.

105.    Plaintiff has been injured in its business and property by reason of the Enterprise's violations of 18 U.S.C. § 1962. The injuries to the Plaintiff directly, proximately, and foreseeably result from or were caused by these violations of 18 U.S.C. § 1962 including, but not limited to, money improperly

collected through usurious loan payments.

106.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, plus costs and attorneys' fees.

## COUNT 6 – DEEPENING INSOLVENCY

107.  The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

108.  At the time Debtor signed the Loan Documents, the Debtor's liabilities exceeded the fair market value of the Debtor's assets.

109.  Lender fraudulently induced the Debtor to enter into the Merchant Advance by knowingly misrepresenting the nature of the transactions and the interest rate to be charged.

110.  The funds received from Lender expanded the debt owed by the Debtor.

111.  The funds received from Lender prolonged the life of the Debtor.

112.  The injury to Debtor could have been avoided, and the value of Debtor could have been preserved, if the Debtor was dissolved promptly, rather than being fraudulently prolonged by virtue of the Loan Documents and financial transaction with Lender.

113.  As a direct and proximate result, Debtor has been injured in an amount to be proven at trial.

## COUNT 7 – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

114.  The Plaintiff re-alleges and incorporates by reference the

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 16 of 37 PageID #: 257

allegations set forth above as if fully set forth herein.

115. Gary, as an officer of the Company, owed a fiduciary duty to the Company including without limitation, the duties of loyalty and to refrain from insider dealing.

116. By entering into a usurious loan, Gary violated his duty of loyalty to the Company.

117. By signing the Loan Documents and purportedly incurring the obligations and granting the interests thereunder, Gary violated his fiduciary duty to the Company.

118. By permitting the daily payments to be withdrawn from the Company's account to repay a usurious loan, Gary breached his fiduciary duty to the Company.

119. Plaintiff believes that Gary used at least a portion of the proceeds from the Merchant Advance for his own personal use.

120. Lender knew or should have known of Gary's tortious conduct that violated his fiduciary duty to the Company.

121. Lender substantially assisted or encouraged Gary's tortious conduct by providing, documenting, closing, and/or funding the usurious loan.

122. Lender substantially assisted or encouraged Gary's tortious conduct by collecting usurious loan payments from the Debtor.

123. As a direct and proximate result, Debtor has been injured in an amount to be proven at trial.

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 17 of 37 PageID #:
258

## COUNT 8 – TORTIOUS INTERFERENCE WITH CONTRACTUAL

## RELATIONS

124. The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

125. Debtor had a contractual relationship with one or more banks or lenders, including without limitation, a loan originated by Coastway Community Bank.

126. Lender obtained credit and/or financial information from Debtor.

127. Lender purportedly evaluated the creditworthiness of Debtor.

128. Lender knew, directly or indirectly, of Debtor's contractual relationships with its existing banks or lenders.

129. Lender intentionally interfered with Debtor's existing contractual relationships by purportedly purchasing Debtor's future receivable for less than reasonably equivalent value.

130. Lender intentionally interfered with Debtor's existing contractual relationships by entering into a usurious loan with Debtor.

131. Lender intentionally interfered with Debtor's existing contractual relationships by collecting an unlawful debt from the Debtor.

132. As a direct and proximate result, Debtor has been injured in an amount to be proven at trial.

## COUNT 9 – STATE RICO (R.I. GEN. LAWS § 7-15-1 ET SEQ)

133. The Plaintiff re-alleges and incorporates by reference the

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 18 of 37 PageID #: 259

allegations set forth above as if fully set forth herein.

134. Lender, Gary, John Does, and ABC Corporations are "persons" within the meaning of R.I. Gen. Laws § 7-15-1(b) in that each is either an individual, corporation, or limited liability company capable of holding a legal interest in property.

135. Plaintiff believes that Lender, Gary, John Does, and/or ABC Corporations were "persons" that exist separate and distinct from the enterprise described herein.

136. Plaintiff believes that Lender, Gary, John Does and/or ABC Corporations constitute an Enterprise ("Enterprise") within the meaning of R.I. Gen. Laws § 7-15-1(b).

137. Plaintiff believes that the Enterprise had a common goal of soliciting, funding, servicing, or collecting upon usurious loans that charge interest at more than rates permitted under applicable state laws.

138. The debt evidenced by the Loan Documents constitutes an unlawful debt within the meaning of R.I. Gen. Laws § 7-15-1(d) because it violates applicable usury statutes.

139. Lender knowingly received income derived directly or indirectly through collection of an unlawful debt.

140. Plaintiff believes that John Does and/or ABC Corporations knowingly received income derived directly or indirectly through collection of an unlawful debt.

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 19 of 37 PageID #:
260

141. Plaintiff believes that John Does and/or ABC Corporations were employed by or associated with the Enterprise and conducted or participated in the conduct of the affairs of the Enterprise through collection of an unlawful debt.

142. Plaintiff has been injured in its business or property by reason of the violations of R.I. Gen. Laws § 7-15-1 et seq.

143. Pursuant to R.I. Gen. Laws § 7-15-4(c), Plaintiff is entitled to treble damages, plus costs and attorneys' fees.

### COUNT 10 – UNJUST ENRICHMENT

144. The Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

145. Debtor conferred a benefit on Lender.

146. Lender appreciated the benefit of money received from the Debtor.

147. Lender obtained the benefit from Debtor by fraud or misrepresentation.

148. Under the circumstances, it would be inequitable for Lender to retain the benefit conferred by Debtor.

149. Debtor has been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff seeks judgment against Defendants, including the following relief:

a)     All damages permitted by law and equity, including but not limited to, direct, consequential, and punitive;

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 20 of 37 PageID #: 261

b)    Prejudgment and post-judgment interest to the maximum extent permitted by law; and

c)    Such other and further relief the Court deems proper.

### JURY DEMAND

Plaintiff demands a jury trial on all claims so triable.

>RICHARD J. LAND, SOLELY AS RECEIVER OF T&C WOODWORKING, INC.,
>
>By his attorneys,
>
>/s/ Andre S. Digou
>_____
>Andre S. Digou (8711)
>Chace Ruttenberg & Freedman, LLP
>One Park Row, Suite 300
>Providence, RI 02903
>Tel.: (401) 453-6400
>Email: adigou@crfllp.com
>Dated: July 10, 2023

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 21 of 37 PageID #: 262

**EXHIBIT 1**

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 22 of 37 PageID #: 263



**PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT**

This Payment Rights Purchase and Sa e Agreement ("Agreement") dated 03/20/2020, is made by and between EBF Partners, LLC d/b/a Everest Business Funding ("Purchaser") and the business identified be ow ("Se er").

**SELLER'S INFORMATION**

| Legal Business Name | T & C Woodworking, Inc. | | | | | | |
|---|---|---|---|---|---|---|---|
| D/B/A | T & C Woodworking, Inc. | | | | | | |
| Type of Business Entity | Corp. | ✔ | Limited Liability Company | | Partnership | | Limited Partnership |
| | Limited Liability Partnership | | | Sole Proprietorship | | Other | |
| Physical Address | 31 PRIVET ST | | | | | | |
| City | PAWTUCKET | State | RI | | Zip | | 02860 |
| Mailing Address | 31 PRIVET ST | | | | | | |
| City | PAWTUCKET | State | RI | | Zip | | 02860 |
| Contact Name | GARY A BRANCH | | | | Position | | |
| Business Phone | 401-728-9663 | | Cell Phone | | | 401-640-8224 | |
| Email | gbranch@tcwoodinc.com | | Website | | | | |
| Date Business Started | | | Federal Tax Id | | | Redacted | |
| Monthly Avg Sales | $283,767.01 | | Annual Sales | | | $3,405,204.08 | |

**OFFER TO SELL AND PURCHASE PAYMENT RIGHTS**

Se er hereby se s, assigns and transfers to Purchaser, without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts by de ivering to Purchaser the Specified Percentage of the proceeds of each future sa e by Se er. "Future Receipts" inc udes a payments made by cash, check, ACH or other e ectronic transfer, credit card, debit card, bank card, charge card (each such card sha be referred to herein as a "Credit Card") or other form of monetary payment in the ordinary course of Se er's business. BASED UPON SELLER S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, SELLER IS CONFIDENT THAT THE PURCHASE PRICE PAID BY PURCHASER IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT SELLER S CURRENT AND FUTURE BUSINESS OPERATIONS.

| Purchase Price | $32,000.00 | Purchased Amount | $44,800.00 | Daily Payment | $373.33 | Specified Percentage | 15 % |
|---|---|---|---|---|---|---|---|
| Daily Payment = (Monthly Average Sales X Specified Percentage ) / Average Weekdays in a Calendar Month | | | | | | | |

Se er sha (1) deposit a Future Receipts into on y one bank account, which must be acceptab e to and pre-approved by Purchaser (the "Account") and (2) instruct Se er's Credit Card processor, which processor must be acceptab e to and pre-approved by Purchaser (the "Processor") who sha serve as Se er's so e Credit Card processor, to deposit a Credit Card receipts of Se er into the Account. Purchaser wi debit the Dai y Payment from the Account each Weekday (Monday – Friday). Se er authorizes Purchaser to initiate e ectronic checks or ACH debits from the Account equa to the Dai y Payment each business day and wi provide Purchaser with a required account information. Se er wi be responsib e for any fees incurred by Purchaser resu ting from a rejected e ectronic check or ACH debit attempt. Purchaser is not responsib e for any overdrafts or rejected transac tions that may resu t from Purchaser's debiting any amount authorized under the terms of this Agreement.

Initial Here _GaB_

**Purchaser Acknowledgment.** There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.

**Seller's Right to Reconciliation.** The Daily Payment amount is intended to represent the Specified Percentage of Seller's Future Receipts. Seller may request that Purchaser reconcile Seller's actual receipts by either crediting or debiting the difference back to or from the Account so that the amount Purchaser debited in the most recent calendar month equaled the Specified Percentage of Future Receipts that Seller collected in that calendar month. Any reconciliation request must be: (1) in writing; (2) include a copy of Seller's bank statement for the calendar month at issue; and (3) be sent to Everest Business Funding at 5 West 37th Street, Suite 1100, New York NY 10018 within 30 days after the last day of the calendar month at issue. It is solely the Seller's responsibility to send a complete bank statement. Failure to send a written reconciliation request within 30 days after the last day of the calendar month at issue forfeits that month's reconciliation.

**Fees.** A list of all fees applicable under this Agreement is contained in Appendix A.

**THE "PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT TERMS AND CONDITIONS" AND THE "PERFORMANCE GUARANTY" ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT.**

| FOR THIS SELLER # (PRINT NAME & TITLE BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS SELLER |
|---|---|---|
| Gary A Branch | *GARY A BRANCH* | ← |
| FOR THIS SELLER #2 (PRINT NAME & TITLE BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS SELLER |
| | | ← |
| FOR THIS OWNER/GUARANTOR # (PRINT NAME BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS OWNER ALSO |
| Gary A Branch | *GARY A BRANCH* | ← |
| FOR THIS OWNER/GUARANTOR #2 (PRINT NAME BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS OWNER ALSO |
| | | ← |

***Purchaser's payment of the Purchase Price shall be deemed Purchaser's acceptance and performance of this Agreement, notwithstanding Purchaser not executing this agreement.***
Each of above-signed Seller(s) and Owner(s) represent that he or she is authorized to sign this Agreement individually and on behalf of Seller and that the information provided herein and in all documents, forms and recorded interviews provided to or with Purchaser is true, accurate and complete in all respects. Seller and each of the above-signed Owners authorize Purchaser, its agents and representatives and any credit reporting agency engaged by Purchaser, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, and (ii) obtain credit reports, including consumer credit reports at any time now or for so long as Seller and/or Owners(s) continue to have any obligation owed to Purchaser as a consequence of this Agreement or for Purchaser's ability to determine Seller's eligibility to enter into any future agreement with Purchaser.

ANY MISREPRESENTATION MADE BY SELLER OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT PURCHASER WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.

Case Number: PC-2023-03295
Filed:DocuSign Envelope ID: 4AD5AE5349-4892-866E-B3E9494B0B8B
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 24 of 37 PageID #: 265

**PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT TERMS AND CONDITIONS**

## I. TERMS OF ENROLLMENT IN PROGRAM

**1.1**  **(a) ACH Authorization.**  Seller shall execute an agreement (the "ACH Authorization") acceptable to Purchaser to authorize the use of the Automated Clearinghouse System (ACH) to retrieve the Daily Payment from the Account. Seller shall provide Purchaser and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Seller's receivables, receipts, deposits and withdrawals into and from the Account. Seller hereby authorizes Purchaser and/or its agent(s) to deduct from the Account the Purchased Amount and any other amounts owed by Seller to Purchaser as specified herein and to pay such amounts to Purchaser. If an ACH transaction is rejected by Seller's financial institution for any reason other than a stop payment order placed by Seller with its financial institution, including without limitation insufficient funds, Seller agrees that Purchaser may resubmit any ACH transaction that is dishonored as permitted under the NACHA rules. In the event Purchaser makes an error in processing any payment or credit, Seller authorizes Purchaser to initiate ACH entries to or from the Account to correct the error. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Seller for these deposits, whether preapproved by Purchaser or not. This additional authorization is not a waiver of Purchaser's right to declare Seller in default if Seller uses an account that Purchaser did not first preapprove in writing. This authorization shall be irrevocable without the prior written consent of Purchaser.

**(b) Bank Holidays and Other Exceptions.**  Purchaser will debit the Daily Payment each Weekday on which the Bank is open and able to process ACH transactions. On the Weekday immediately following any Weekday or Weekdays on which the Bank was not open to process ACH transactions, Purchaser will debit the designated account for an amount equal to the sum of: (i) the Daily Payment amount due on that Weekday, plus (ii) the Daily Payment amount due on the preceding Weekday when the Bank was not open or could not process ACH transactions.

**1.2**  **Financial Condition.**  Seller and Guarantor(s) authorize Purchaser and its agents to investigate their financial responsibility and history, and will provide to Purchaser any authorizations, bank or financial statements, tax returns, etc., as Purchaser deems necessary in its sole discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Purchaser is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.3**  **Transactional History.**  Seller authorizes all of its banks and brokers and Credit Card processors to provide Purchaser with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program.

**1.4**  **Indemnification.**  Seller and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by Purchaser for monies owed to Purchaser from Seller and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by Purchaser.

**1.5**  **No Liability.**  In no event will Purchaser be liable for any claims asserted by Seller or Guarantor(s) under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Seller and Guarantor(s). In the event these claims are nonetheless raised, Seller and Guarantor(s) will be jointly liable for all of Purchaser's legal fees and expenses resulting therefrom. Seller and each Owner and each Guarantor hereby waives to the maximum extent permitted by law any claim for damages against Purchaser or any of its affiliates relating to any (i)investigation undertaken by or on behalf of Purchaser as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.6**  **Reliance on Terms.**  Sections 1.1, 1.3, 1.4, 1.6 and 1.8 of this Agreement are agreed to for the benefit of Seller, Purchaser and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.7**  **Accounting Records, and Place of Business.**  Purchaser or its designated representatives and agents shall have the right during Seller's normal business hours and at any other reasonable time to examine the interior and exterior of any of Seller's places of business. Purchaser may examine, among other things, whether Seller (a) has

Initial Here  *GllB*

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 25 of 37 PageID #: 266

a place of business that is separate from any personal residence, (b) is open for business, and (c) has sufficient inventory to conduct Seller's business. When performing an examination, Purchaser may photograph the interior and exterior of any of Seller's places of business, including any signage, and may photograph any Owner. Purchaser or any of its agents shall have the right to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Seller's accounts or other transactions between the parties thereto and the general financial condition of Seller and Purchaser may remove any of such records temporarily for the purpose of having copies made thereof. Purchaser shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Specified Percentage of receipts has been made available for remittance to Purchaser. Seller hereby agrees to fully cooperate with such analysis upon the request of Purchaser.

**1.8    Collection from Third Parties.** Seller hereby grants Purchaser full authority to take any action or execute any instrument or document to settle all obligations due to Seller from any bank or Processor, or in the case of an occurrence of an Event of Default under Section 3 hereof, to Purchaser under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Purchased Amount; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iii) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment direct y to Purchaser; (iv) to file any claims or take any action or institute any proceeding that Purchaser may deem necessary for the collection of any of the unpaid Purchased Amount, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Seller and Purchaser is authorized to use Seller's funds to pay for same; and (v) Purchaser shall have the right, without waiving any of its rights and remedies and without notice to Seller or any Owner/Guarantor, to notify any Credit Card processor of the sale of Future Receipts and re-direct the remittance of daily settlements to an account of Purchaser's choosing in order to settle all obligations due to Purchaser under this Agreement.

**1.9    Confidentiality.** Seller understands and agrees that the terms and conditions of the products and services offered by Purchaser, including this Agreement and any other Purchaser documentations (collectively, "Confidential Information") are proprietary and confidential information of Purchaser. Accordingly, unless disclosure is required by law or court order, Seller shall not disclose Confidential Information of Purchaser to any person other than an attorney, accountant, financial advisor or employee of Seller who needs to know such information for the purpose of advising Seller ("Advisor"), provided such Advisor uses Confidential Information so only for the purpose of advising Seller and first agrees in writing to be bound by the terms of this section. A breach hereof entitles Purchaser to not only damages and legal fees but also to both a temporary restraining order and a preliminary injunction without bond or security.

**1.10    D/B/As.** Seller hereby acknowledges and agrees that Purchaser may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between Purchaser and Seller, including the filing of UCC-1 financing statements and any other notices or filings.

**1.11    Application of Amounts Received.** Subject to applicable law, Purchaser reserves the right to apply any amounts received from Seller to any fees or other charges due to Purchaser from Seller prior to applying such amounts to reduce the undelivered balance of Purchased Amount.

**1.12    Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Purchaser pursuant to this Agreement are "accounts", "general intangibles", or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Purchaser. To the extent the Future Receipts are "accounts" or "payment intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC, (ii) this Agreement constitutes a "security agreement" under the UCC, and (iii) Purchaser has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Purchaser may notify account debtors, or other persons obligated on the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Purchaser.

**1.13    Financing Statements.** Seller hereby authorizes Purchaser to file one or more financing statements in order to give notice that the Purchased Amount of Future Receipts is the sole property of Purchaser. Each such filing may

Initial Here _GlB_

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 26 of 37 PageID #: 267

state that such sa e is intended to be a sa e and not an assignment for security and may state that the Se er is prohibited from obtaining any financing that impairs the va ue of the Future Receipts or Purchaser's right to co ect same. Se er authorizes Purchaser to app y amounts received from Se er to costs incurred by Purchaser associated with the fi ing, amendment or termination of any such fi ings.

## II. SELLER'S REPRESENTATIONS, WARRANTIES AND COVENANTS

**2.1**   **Good Faith, Best Efforts and Due Diligence.**   Se er wi conduct its business in good faith and wi use its best efforts to maintain and grow its business. Furthermore, Se er agrees, warrants and represents hereby that Se er wi constant y perform a appropriate due di igence and credit checks of a of the customers' finances, cash flow, so vency, good faith, payment histories and business reputations as may be commercia y reasonab e to ensure any and a products and/or services provided, so d or de ivered by Se er to said customers wi be paid for by customers in fu and on time, and wi not resu t in the creation of an unpaid account. This is not a guaranty of payment by Se er 's customers but is an ob igation of commercia y reasonab e due di igence investigation and credit check of customers before extending credit to them and continuing no ess frequent y than month y so ong as sums are sti due.

**2.2**   **Nonrecourse Sale of Payment Rights.**   Se er represents and warrants that it is se ing the Purchased Amount of Future Receipts to Purchaser in Se er 's norma course of business and the Purchase Price paid by Purchaser is good and va uab e consideration for the sa e. Se er is se ing a portion of a future revenue stream to Purchaser at a discount, not borrowing money from Purchaser. Purchaser assumes the risk that Future Receipts wi be remitted more s ow y than Purchaser may have anticipated or projected because Se er 's business has s owed down, or the fu Purchased Amount may never be remitted because Se er 's business went bankrupt or otherwise ceased operations in the ordinary course of business. By this Agreement, Se er transfers to Purchaser fu and comp ete ownership of the Purchased Amount of Future Receipts and Se er retains no ega or equitab e interest therein.

**2.3**   **Financial Condition and Financial Information.**   Se er 's and Guarantors' bank and financia statements, copies of which have been furnished to Purchaser, and future statements that wi be furnished hereafter at the request of Purchaser, fair y represent the financia condition of Se er and Guarantor(s) at such dates, and since those dates there have been no materia adverse changes, financia or otherwise, in the condition, operation or ownership of Se er. Purchaser may request bank statements and other financia information at any time during the performance of this Agreement and the Se er and Guarantor(s) sha provide them to Purchaser within 5 business days. Se er 's or Guarantors' fai ure to do so is a materia breach of this Agreement.

**2.4**   **Governmental Approvals.**   Se er is in comp iance and sha comp y with a aws and has va id permits, authorizations and icenses to own, operate and ease its properties and to conduct the business in which it is present y engaged and/or wi engage in hereafter.

**2.5**   **Authorization.**   Se er and the person(s) signing this Agreement on beha f of Se er, have fu power and authority to incur and perform the ob igations under this Agreement, a of which have been du y authorized.

**2.6**   **Insurance.**   Se er wi maintain business-interruption insurance naming Purchaser as oss payee and additiona insured in amounts and against risks as are satisfactory to Purchaser and sha provide Purchaser proof of such insurance upon request.

**2.7**   **Processor and Bank Account.**   Se er wi not change its Credit Card processor, add termina s, change its financia institution or bank account(s), use mu tip e bank accounts, or take any simi ar action that cou d interfere with Purchaser's abi ity to co ect the Specified Percentage of the Future Receipts purchased under this Agreement, without Purchaser's prior written consent. Any such changes sha be a materia breach of this Agreement.

**2.8**   **Change of Name, Type, Location or Sale of Business.**   Se er wi not conduct Se er's businesses under any name other than as disc osed to Processor and Purchaser, nor wi Se er change any of its p aces of business or the type of business without prior written consent by Purchaser. Se er wi not vo untari y se , dispose, transfer or otherwise convey its business or substantia y a business assets without (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee assuming a of Se er s ob igations under this Agreement pursuant to documentation satisfactory to Purchaser.

Initial Here

**2.9**   **Daily Batch Out.**   Se er wi   ensure that a  Credit Card transactions are communicated dai y to the Processor and not  ater than the day on which such transactions occurred.

**2.10**   **Estoppel Certificate.**   Se er wi   at a   times, and from time to time, upon at east 1 day's prior notice from Purchaser to Se er, execute, acknow edge and de iver to Purchaser and/or to any other person, firm or corporation specified by Purchaser, a statement certifying that this Agreement is unmodified and in fu   force and effect (or, if there have been modifications, that the same is in fu   force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been de ivered to Purchaser or the amount of the Purchased Amount that has not been de ivered to Purchaser.

**2.11**   **No Bankruptcy.**   As of the date of this Agreement, Se er is not inso vent and does not contemp ate and has not fi ed any petition for bankruptcy protection under Tit e 11 of the United States Code and there has been no invo untary petition brought or pending against Se er. Se er represents that it has not consu ted with a bankruptcy attorney within 6 months prior to the date of this Agreement, and that it has no present intention of c osing its business or ceasing to operate its business, either permanent y or temporari y, during the 6 month period after the date of this Agreement. Se er further warrants that it does not anticipate fi ing any such bankruptcy petition and it does not anticipate that an invo untary petition wi   be fi ed against it.

**2.12**   **Sharing of Information.**   Se er hereby authorizes Purchaser to share information regarding Se er's performance under this Agreement with affi iates and unaffi iated third parties.

**2.13**   **Unencumbered Receipts.**   Se er has good, comp ete, unencumbered and marketab e tit e to a   Future Receipts, free and c ear of any and a   iabi ities,  iens, c aims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, p edges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemp ated with, or adverse to the interests of Purchaser.

**2.14**   **Business Purpose.**   Se er is a va id business in good standing under the  aws of the jurisdictions in which it is organized and/or operates. Se er agrees to use the Purchase Price so e y for business purposes, and not for persona , fami y or househo d purposes. Se er understands that Se er s agreement not to use the Purchase Price for persona , fami y or househo d purposes means certain important rights conferred upon consumers pursuant to federa   or state  aw wi   not app y to this Agreement. Se er agrees that a breach by Se er of the provisions of this section wi   not affect Purchaser's rights to the Purchased Amount or to use any remedy  ega y avai ab e to Purchaser to obtain de ivery of the Purchased Amount.

**2.15**   **Defaults under Other Contracts.**   Se er's execution of, and/or performance under this Agreement, wi   not cause or create an Event of Defau t by Se er under any contract with another person or entity.

**2.16**   **Account.**   Se er represents and warrants that (i) the Account is Se er's bank account; (ii) the person executing this Authorization on beha f of Se er is an authorized signer on the Account and has the power and authority to authorize Purchaser to initiate ACH transactions to and from the Account; (iii) the Account is a  egitimate, open, and active bank account used so e y for business purposes and not for persona , fami y or househo d purposes.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1**   **Events of Default.**   The occurrence of any of the fo owing events sha   constitute an "Event of Defau t": (a) Se er intentiona y interferes with Purchaser's right to co ect the Dai y Payment in vio ation of this Agreement; (b) Se er vio ates any term or covenant in this Agreement; (c) Any representation or warranty by Se er in this Agreement proves to have been incorrect, fa se or mis eading in any materia  respect when made; or (d) Se er defau ts under any of the terms, covenants and conditions of any other agreement with Purchaser.

**3.2**   **Remedies.**   If any Event of Defau t occurs, Purchaser may proceed to protect and enforce its rights inc uding, but not imited to, the fo owing:

**A.**   The Specified Percentage sha   equa  100%. The fu  unco ected Purchased Amount p us a  fees (inc uding  ega  fees) due under this Agreement wi   become due and payab e in fu   immediate y.

Initial Here   *GMB*

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:57 PM
Envelope: 4184933
Reviewer: Dianna J.

DocuSign Envelope ID: 4D04E5339-4892-B66E-B3C949480B8B

**B.** Purchaser may proceed to protect and enforce its rights by lawsuit. In any such lawsuit, under which Purchaser shall recover Judgment against Seller, Seller shall be liable for all of Purchaser's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Purchaser under this provision shall be limited as provided in the arbitration provision set forth in Section VIII.

**C.** Purchaser may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Seller's bank account or otherwise for all sums due to Purchaser.

**D.** Seller shall pay to Purchaser all reasonable costs associated with the Event of Default and the enforcement of Purchaser's remedies set forth above, including but not limited to court costs and attorneys' fees.

Subject to arbitration as provided in Section VIII. All rights, powers and remedies of Purchaser in connection with this Agreement may be exercised at any time by Purchaser after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3  Required Notifications.** Seller is required to give Purchaser written notice within 24 hours of any filing under Title 11 of the United States Code. Seller is required to give Purchaser 7 days' written notice prior to the closing of any sale of all or substantially all of the Seller's assets or stock.

## IV. MISCELLANEOUS

**4.1  Modifications; Agreements.**   No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Purchaser.

**4.2  Assignment.**   Purchaser may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

**4.3  Notices.**   All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to Purchaser shall become effective only upon receipt by Purchaser. Notices to Seller shall become effective three days after mailing.

**4.4  No Waiver of Remedies.**   No failure on the part of Purchaser to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5  Binding Effect; Governing Law, Venue and Jurisdiction.**   This Agreement shall be binding upon and inure to the benefit of Seller, Purchaser and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. Except as set forth in Arbitration Section, this Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Purchaser so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum. ADDITIONALLY, MERCHANT AND GUARANTOR AGREE THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY PURCHASER WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE MAILING ADDRESS(ES) LISTED ON PAGE 1 OF THIS AGREEMENT.

**4.6  Survival of Representation, etc.**   All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

Initial Here  *GdB*

the segment

**4.7**    **Interpretation.**    A    Parties hereto have reviewed this Agreement with an attorney of their own choosing and have re ied on y on their own attorney's guidance and advice or have been provided sufficient opportunity to have an attorney of their choosing review the Agreement. No construction determinations sha    be made against either Party hereto as drafter.

**4.8**    **Severability.**    In case any of the provisions in this Agreement is found to be inva id, i ega or unenforceab e in any respect, the va idity, ega ity and enforceabi ity of any other provision contained herein sha   not in any way be affected or impaired.

**4.9**    **Entire Agreement.**    Any provision hereof prohibited by aw sha    be ineffective on y to the extent of such prohibition without inva idating the remaining provisions hereof. This Agreement and the Performance Guaranty embody the entire agreement between Se er and Purchaser pertaining to the subject matter thereof and supersede a   prior agreements and understandings re ating to the subject matter hereof.

**4.10**    **Facsimile Acceptance.**    Facsimi e signatures hereon sha    be deemed acceptab e for a   purposes.

**4.11**    **Monitoring, Recording, and Solicitations.**    If any Event of Defau t occurs, Purchaser may proceed to protect and enforce its rights inc uding, but not imited to, the fo owing:

    **A.**    **AUTHORIZATION TO CONTACT SELLER BY PHONE.**    Se er and each Owner authorize Purchaser, its affi iates, agents and independent contractors to contact Se er and each Owner at any te ephone number Se er or any Owner provides to Purchaser or from which Se er or any Owner p aces a ca to Purchaser, or any te ephone number where Purchaser be ieves it may reach Se er or any Owner, using any means of communication, inc uding but not imited to ca s or text messages to mobi e, ce u ar, wire ess or simi ar devices or ca s or text messages using an automated te ephone dia ing system and/or artificia voices or prerecorded messages, even if Se er or and Owner incurs charges for receiving such communications.

    **B.**    **AUTHORIZATION TO CONTACT SELLER BY OTHER MEANS.**    Se er and each Owner a so agree that Purchaser, its affi iates, agents and independent contractors, may use any other medium not prohibited by aw inc uding, but not imited to, mai , e-mai and facsimi e, to contact Se er and each Owner. Se er and each Owner express y consent to conduct business by e ectronic means.

    **C.**    **RIGHTS TO OPT-OUT OR MAKE CHANGES.**    Se er and each Owner are not required to agree to Sections 4.11(A) or 4.11(B) in order to enter into this Agreement. If Se er or any Owner wishes to opt out of Section 4.11(A) and/or 4.11(B), or if Se er or any Owner wants to change how Purchaser contacts them, inc uding with respect to any te ephone number that Purchaser might use, p ease ca Everest Business Funding at 800-558-0654 (and se ect Customer Service from the menu prompts).

## V. PERSONAL GUARANTY OF PERFORMANCE.

**5.1**    **Personal Guaranty of Performance.**    Guarantor (i) wi derive direct or indirect economic benefit from this Agreement and (ii) is direct y or indirect y invo ved in the business operations of Se er. As an inducement to Purchaser to purchase the Future Receipts, Guarantor agrees to irrevocab y, abso ute y and uncondition y guarantee to Purchaser prompt and comp ete performance of the fo owing ob igations of Se er (the "Guaranteed Ob igations"):

    **5.1.1**    Se er's ob igation to provide bank statements and other financia information within 5 business days after request from Purchaser;

    **5.1.2**    Se er's ob igation to not change its Credit Card processor, add termina s, change its financia institution or bank account(s), use mu tip e bank accounts, or take any simi ar action that cou d have an adverse effect upon Se er 's ob igations under this Agreement, without Purchaser's prior written consent;

    **5.1.3**    Se er's ob igation to not conduct Se er's businesses under any name other than as disc osed to Processor and Purchaser;

<span style="background-color: yellow">Initial Here</span>    *GdB*

3

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:57 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-cv-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 30 of 37 PageID #: 271

5.1.4    Seller's obligation to not change any of its places of business or the type of business without prior written consent by Purchaser; and

5.1.5    Seller's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Purchaser.

In the event that Seller fails to perform any of the Guaranteed Obligations, Purchaser may recover from Guarantor for all of Purchaser's losses and damages and all remedies specified in Section 3.2 of this Agreement by enforcement of Purchaser's rights under this Performance Guaranty without first seeking to obtain payment from Seller or any other guarantor, or any other guaranty.

**5.2    Guarantor Waivers.**   Purchaser does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Performance Guaranty if it is not notified of: (i) Seller's failure to pay timely perform any obligation under the Agreement; (ii) any adverse change in Seller's financial condition or business; (iii) Purchaser's acceptance of the Agreement; and (iv) any renewal, extension or other modification of the Agreement or Seller's other obligations to Purchaser. In addition, Purchaser may take any of the following actions without releasing Guarantor from any of its obligations under the Agreement and this Performance Guaranty: (i) renew, extend or otherwise modify the Agreement or Seller's other obligations to Purchaser; and (ii) release Seller from its obligations to Purchaser. Guarantor shall not seek reimbursement from Seller or any other guarantor for any amounts paid by it under the Agreement or this Performance Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Seller, or any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Performance Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that Purchaser must return any amount paid by Seller or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under the Agreement and this Performance Guaranty shall include that amount.

**5.3    Guarantor Acknowledgement.**   Guarantor acknowledges that Guarantor understands the seriousness of the provisions of the Agreement, including the Jury Trial Waiver and Arbitration sections, and has had a full opportunity to consult with counsel their choice; and have consulted with counsel or have decided not to avail himself / herself / themselves of that opportunity.

## VI. JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

## VII. CLASS ACTION WAIVER.

PURCHASER, SELLER, AND EACH GUARANTOR ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

## VIII. ARBITRATION.

IF PURCHASER, SELLER OR A GUARANTOR REQUESTS, THE OTHER PARTY AND THE GUARANTOR(S) AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF A PARTY OR A

Initial Here   *GdB*

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:57 PM
Envelope: 4184935
Reviewer: Dianna J.

DocuSign Envelope ID: 4D4E5349-4892-B66E-B3C949480B8B

Case 1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 31 of 37 PageID #: 272

GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY OR GUARANTOR MUST FIRST SEND TO THE OTHER PARTY, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF THE PARTIES OR THE GUARANTOR(S) DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, EITHER PARTY OR THE GUARANTOR(S) MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR THE FORUM. PURCHASER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH THE SELLER AND THE GUARANTOR MUST PAY FILING FEES, PURCHASER WILL ONLY REIMBURSE THE SELLER'S ARBITRATION FILING FEE. EXCEPT AS PROVIDED IN THE NEXT SENTENCE, PURCHASER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR(S) OR THE RELIEF SOUGHT BY SELLER OR THE GUARANTOR(S) IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN PURCHASER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR FORUM RULES. IF THE ARBITRATOR GRANTS RELIEF TO THE SELLER OR THE GUARANTOR(S) THAT IS EQUAL TO OR GREATER THAN THE VALUE OF WHAT THE SELLER OR THE GUARANTOR(S) REQUESTED IN THE ARBITRATION, PURCHASER SHALL REIMBURSE SELLER OR THE GUARANTOR(S) FOR THAT PERSON'S REASONABLE ATTORNEYS' FEES AND EXPENSES INCURRED FOR THE ARBITRATION. SELLER AND THE GUARANTOR(S) AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. EACH PARTY AND THE GUARANTOR(S) MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, THE PARTIES AND THE GUARANTOR(S) AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. ANY ARBITRATION DECISION RENDERED PURSUANT TO THIS ARBITRATION AGREEMENT MAY BE ENFORCED IN ANY COURT WITH JURISDICTION. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

SELLER AND ANY GUARANTOR MAY OPT-OUT OF THIS CLAUSE. TO OPT-OUT OF THIS ARBITRATION CLAUSE, SELLER AND/OR GUARANTOR MAY SEND PURCHASER A NOTICE THAT THE SELLER OR GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT-OUT TO BE EFFECTIVE, SELLER AND/OR GUARANTOR MUST SEND AN OPT-OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT:

Customer Service Department
Everest Business Funding
5 West 37th Street
Suite 1100
New York, NY 10018

| GUARANTOR #  (PRINT NAME BELOW) | S GNATUR  (SIGN BELOW) | MUST SIGN AS OWNER |
|---|---|---|
| Gary A Branch | *GARY A BRANCH* | ← |
| GUARANTOR #2  (PRINT NAME BELOW) | S GNATUR  (SIGN BELOW) | MUST SIGN AS OWNER |
| | | ← |

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

**EXHIBIT 2**

Case Number: PC-2023-03295
Filed in First Circuit Court 18D-D5245-2022-4892 R66E-B3C949480B8B
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

Case 1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 33 of 37 PageID #:
274

**AGREEMENT FOR DIRECT DEPOSITS (ACH CREDITS)**
**AND DIRECT COLLECTIONS (ACH DEBITS)**

**DEFINITIONS:**
**Purchaser: EBF Partners, LLC d/b/a Everest Business Funding D/B/A EBF**
**Seller: T & C Woodworking, Inc.**

**Designated Bank Account:**      T & C Woodworking, Inc. DBA T & C Woodworking, Inc.

_____

(Name of account exact y as it appears on your Bank Statements or Bank Letters)

Bank Name:    Harborone Bank     Branch:    linclon     Tax ID: Redacted

ABA: Routing:    Redacted     DDA: Account No:    Redacted

**Additional Alternate Bank Account(s), if any, are listed on the attached Appendix "A"**

**Purchase and Sale Agreement:** Payment Rights Purchase and Sale Agreement between Seller and Purchaser, dated as of _03/20/2020_

**NACHA RULES:** The Rules and Operating Guidelines of NACHA – The Electronic Payments Association

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Purchase and Sale Agreement.

**This Agreement for Direct Deposits (ACH Credits) and Direct Collections (ACH Debits) is part of (and incorporated by reference into) the Payment Rights Purchase and Sale Agreement. Seller should keep a copy of this important legal document for Seller's records.**

**DISBURSEMENT OF PURCHASE PRICE.** By signing below, Seller authorizes Purchaser, after electing to purchase the Purchased Amount, to disburse the Purchase Price (less any applicable fees) set forth in the Payment Rights Purchase and Sale Agreement, or to disburse other amounts due to Seller under the Payment Rights Purchase and Sale Agreement, by initiating an ACH credit to the Designated Bank Account.

**COLLECTION OF FUNDS ARISING FROM FUTURE RECEIPTS.** By signing below, Seller authorizes Purchaser to collect amounts Purchaser is entitled to receive under the Payment Rights Purchase and Sale Agreement by initiating ACH debits to the Designated Bank Account, as follows:

For the amount of _$373.33_ (or) Percentage of each banking deposit: _15 %_

On the following Days: Each business day. On the business day immediately following any business day(s) on which Seller's bank was not open or was not able to process ACH transactions, the Purchaser will debit the Designated Bank Account for an amount equal to the sum of (i) the Daily Payment amount due on that business day, plus (ii) the Daily Payment amount(s) due on the preceding business day(s) when the Bank was not open or could not process ACH transactions.

If an ACH debit from the Designated Bank Account is rejected by Seller's financial institution for any reason other than termination (as further defined in this agreement), Seller authorizes Purchaser to initiate an additional ACH debit to the Alternate Bank Account(s) to collect the amounts due to Purchaser.

ISO#4438/AR#1105719/03202020

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:57 PM
Envelope: 4184896
Reviewer: Dianna J.

Case 1:23-CV-00374-JJM-PAS    Document 9    Filed 03/20/24    Page 34 of 37 PageID #: 275

**MISCELLANEOUS.** If any ACH transaction date falls on a weekend or holiday, Seller understands and agrees that the transaction may be executed on the next business day. If a transaction is rejected by Seller's financial institution for any reason other than termination of this authorization, including without limitation insufficient funds, Seller understands that Purchaser may, at its discretion, attempt to process the transaction again as permitted under the NACHA Rules. Seller also authorizes Purchaser to initiate ACH entries to correct any erroneous payment transaction. Seller understands that Seller is responsible for ensuring that funds arising from Future Receipts remain in the Designated Bank Account each day until Purchaser debits the amount that the Payment Rights Purchase and Sale Agreement authorizes Purchaser to debit from the Designated Bank Account for that day. By signing below, Seller attests that both the Designated Bank Account and the Alternate Bank Account(s) were established for business purposes and not primarily for personal, family or household purposes.

Purchaser is not responsible for any overdrafts, rejected transactions, or fees that may result from credits or debits initiated under this Agreement. The origination of ACH transactions to the Designated Bank Account and the Alternate Bank Account(s) must comply with, and both Purchaser and Seller agree to be bound by, the provisions of applicable law and the NACHA Rules.

Seller authorizes Purchaser to contact Seller's financial institution to obtain available funds information and/or to verify any information Seller has provided about the Designated Bank Account and/or the Alternate Bank Account(s) and to correct any missing, erroneous or out-of-date information. Seller understands and agrees that any revocation or attempted revocation of this Authorization will constitute an event of default under the Payment Rights Purchase and Sale Agreement. In the event that Seller closes the Designated Bank Account and the Alternate Bank Account(s), or the Designated Bank Account t and the Alternate Bank Account(s) have insufficient funds for any ACH transaction under this Authorization, Seller authorizes Purchaser to contact Seller's financial institution and obtain information (including account number, routing number and available balance) concerning any other deposit account(s) maintained by Seller with Seller's financial institution, and to initiate ACH transactions under this Authorization to such additional account(s). To the extent necessary, Seller grants Purchaser a limited Power of Attorney to take action in Seller's name to facilitate this authorization.

This authorization is to remain in full force and effect until Purchaser has received written notification from Seller at 5 West 37th Street Suite 1100 New York NY 10018 at least 5 banking days prior to its termination to afford the Purchaser a reasonable opportunity to act on it.

The individual signing below on behalf of Seller certifies that he/she is an authorized signer on the Designated Bank Account and the Alternate Bank Account(s). Seller will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Seller requests the financial institution(s) that hold(s) the Designated Bank Account and the Alternate Bank Account(s) to honor all ACH entries initiated in accordance with this Authorization Agreement.

Seller:    T & C Woodworki

First Owner Sign Here:    _GARY A BRANCH_

First Owner Print Name:    Gary A Branch

First Owner Title:    President                Date:   3/20/2020

Second Owner Sign Here:    _____

Second Owner Print Name:    _____

Second Owner Title:    _____        Date:   _____

ISO#4438/AR#1105719/03202020

Case Number: PC-2023-03295
Filed in Superior Court of Arizona, Pinal County
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

DocuSign Envelope ID: 4A5D4E5239-4892-B66E-B3C949489B8B

**AGREEMENT FOR DIRECT DEPOSITS (ACH CREDITS)**
**AND DIRECT COLLECTIONS (ACH DEBITS)**
**Appendix "A"**

**Alternate Bank Account:**    T&C Woodworking,inc.
                              (Name of account exact y as it appears on your Bank Statements or Bank Letters)

Bank Name:    Harborone          Branch: linclon          Tax ID: Redacted
ABA: Routing:    Redacted              DDA: Account No:    Redacted

**Alternate Bank Account:**
                              (Name of account exact y as it appears on your Bank Statements or Bank Letters)

Bank Name:                       Branch:                   Tax ID: Redacted
ABA: Routing:                         DDA: Account No:

**Alternate Bank Account:**
                              (Name of account exact y as it appears on your Bank Statements or Bank Letters)

Bank Name:                       Branch:                   Tax ID: Redacted
ABA: Routing:                         DDA: Account No:


Seller:    T & C Woodworki
First Owner Sign Here:    *GARY A BRANCH*          Date: 3/20/2020
First Owner Print Name:    Gary A Branch                   First Owner Title:
Second Owner Sign Here:                          Date:
Second Owner Print Name:                          Second Owner Title:


ISO#4438/AR#1105719/03202020

Case Number: PC-2023-03295
Filed in Providence/Bristol County Superior Court
Submitted: 7/10/2023 2:37 PM
Envelope: 4184933
Reviewer: Dianna J.

DocuSign Envelope ID: A4D5DAE5-533D-4892-B66E-B3C949480B8B

Case 1:23-cv-00374-JJM-PAS   Document 9   Filed 03/20/24   Page 36 of 37 PageID #: 277

## Addendum to Payment Rights Purchase and Sale Agreement

| | | |
|---|---|---|
| **Origination fee:** | This fee is paid by the Merchant to EBF Partners, LLC d/b/a Everest Business Funding to cover the costs of underwriting. These fees include the cost of credit reports, site inspection fees, and other administrative costs. | |

| **Amount of Advance** | **Origination Fee** |
|---|---|
| Up to $7,500 | $ 199.00 |
| $7,501 to $10,000 | $ 275.00 |
| $10,001 to $25,000 | $ 400.00 |
| $25,001 to $50,000 | $ 800.00 |
| $50,001 to $100,000 | $1,295.00 |
| $100,001 to $250,000 | $2,200.00 |
| Over $250,000 | $2,900.00 |

**Funding fee:**          **$50.00**   For same day wire transfer

| **ACH / Lockbox / CC Split Processing Fee:** | The administrative setup and maintenance of these programs is labor intensive, not an automated process, and have fees we pay, requiring us to charge this fee to cover those costs. |
|---|---|

| **Amount of Advance** | **Fee** |
|---|---|
| Up to $7,500 | $ 99.00 |
| $7,501 to $10,000 | $150.00 |
| $10,001 to $25,000 | $275.00 |
| Over $25,000 | $395.00 |

*The three fees mentioned above will be deducted from the proceeds of your advance. The fee being paid is the amount associated with the dollar amount of your advance.*

| | | |
|---|---|---|
| **Bank Change Fee:** | For each change of account requested, account may only be changed to another commercial checking account. | **$75.00** |
| **NSF Fee:** | Non-sufficient funds (NSF) fee. | **$35.00 per NSF** |
| **Rejected ACH:** | If an ACH is rejected based on any action taken by the Seller to our specific ACH debit or All ACH debits without prior notification and authorization by Purchaser. | **$100.00 per incident** |
| **ACH Block on Account:** | If the Seller places an ACH Block on their account preventing us from processing an ACH debit to the Account. This action would also place the agreement in default. | **$2,500.00** |
| **Default Fee:** | If the Seller changes the bank account or intentionally diverts receivables collections to another account preventing the Purchaser from receiving payments. | **$5,000.00** |
| **UCC Filling Fee:** | | **$250.00** |

Business Name:    T & C Wo

First Owner Sign Here:    *GARY A BRANCH*  _____

First Owner Print Name:    Gary A Branch

First Owner Title:    _____    Date:  3/20/2020

Second Owner Sign Here:    _____

Second Owner Print Name:    _____

Second Owner Title:    _____    Date:  _____

ISO#4438/AR#1105719/03202020



## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from EBF Partners, LLC d/b/a Everest Business Funding. We look forward to being your funding partner for as long as you need.

## Daily ACH Program:

EBF Partners, LLC d/b/a Everest Business Funding will require viewing access to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

EBF Partners, LLC d/b/a Everest Business Funding will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower case letters.

Name of Bank:     Harborone Bank

Bank portal website:     www.harborone.com

Username:     Redacted

Password:     Redacted

Security Question / Answer 1:

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account:

*GARY A BRANCH*                                                    3/20/2020

Merchant / Owner Signature                           Date

ISO#4438/AR#1105719/03202020